Estate of Berthold Goldsmith, Sr., Deceased, Herbert H. Maass, Berthold Goldsmith, Jr. and John J. Goldsmith, as Executors of the Last Will and Testament of Berthold Goldsmith, Sr., Deceased v. Commissioner.
Estate of Goldsmith v. Commissioner
Docket No. 3134.
United States Tax Court
1944 Tax Ct. Memo LEXIS 233; 3 T.C.M. (CCH) 506; T.C.M. (RIA) 44181; May 29, 1944
*233 In 1887, 1894 and 1896, decedent purchased three separate policies of insurance, the proceeds of which were payable to decedent's mother, to decedent's executors, administrators and assigns, and to decedent's wife, respectively. By endorsements made in 1932 two of the policies were made payable to decedent's wife, if living, and, if not, to insured's sons, Berthold Goldsmith, Jr., and John J. Goldsmith, respectively, the third policy being made payable to decedent's wife as sole beneficiary. The policies provided that the interest of any beneficiary, dying before insured, should vest in the insured unless otherwise provided. Decedent's wife and two sons survived him. Held, that no interest in, or control of the policies was reserved by decedent and that hence no sum is includible in the decedent's estate on account of such policies. David J. Levy, Esq., 20 Exchange Place, New York, N. Y., for the petitioners. Robert K. Garnett, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $2,758.04 in the estate tax liability of the estate of Berthold Goldsmith, Sr., deceased. The issue presented is whether or not the *234 proceeds of certain policies on the life of the decedent were properly included in the estate. Findings of Fact The facts were stipulated and as so stipulated are adopted as findings of fact. Such facts as are material to the issue are as follows: The decedent, Berthold Goldsmith, Sr., a resident of Newark, New Jersey, died on August 17, 1941. The estate tax return for his estate was filed with the collector of internal revenue for the fifth district of New Jersey. The decedent was survived by his wife, Marion Goldsmith, and two sons, Berthold Goldsmith, Jr. and John J. Goldsmith. At the date of his death he was insured under certain policies of life insurance, including three policies of the Mutual Life Insurance Company of New York, hereinafter called the company, bearing numbers 616,801, 799,126, and 305,776, respectively, each in the face amount of $20,000. The company issued policy No. 616,801 on April 23, 1894. By the terms of this policy, as originally issued, the proceeds were payable to the decedent's "executors, administrators or assigns." By endorsement dated October 24, 1899, made on the policy, the beneficiary of this policy was changed to "the Insured's Wife, Marion *235 Goldsmith, if living, if not living to Insured's executors, admi-istrators or assigns." By two endorsements dated August 23, 1932, made on the policy it was changed as follows: "By mutual consent and upon request this policy # 616801 is made to read, and shall be payable to the Insured's wife Marion Goldsmith if living if not to Insured's son Berthold Goldsmith, Jr., the beneficiary. "New York, N. Y., August 23, 1932, William L. Simrell Secretary (Signed)" "ALL RIGHTS RESERVED TO THE BENEFICIARY. - Marion Goldsmith one of the beneficiaries herein without the consent, and to the exclusion, of the Insured, or any other beneficiary, or any other person, shall have the right, during his lifetime to exercise every option, enjoy every privilege, and receive every benefit conferred by this policy, or allowed by the Company, including the right to change the beneficiary. "Change of Beneficiary. - Unless there be an existing assignment of this policy other than to the Company, the right to change the beneficiary may be exercised from time to time, while the policy is in force, by filing written notice, at the Home Office of this Company, accompanied by the policy for endorsement. Such *236 change shall take effect upon endorsement of the policy by the Company. "The interest of any beneficiary who dies before the Insured (the person upon whose life this policy is issued) shall vest in the Insured unless otherwise provided in this policy. "THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK. "New York, N. Y. August 23, 1932. "31-519 ARABC to B. Life Prior 1907. William L. Simrell Secretary (Signed)" The company issued policy No. 799,126 on December 2, 1896. By the terms of this policy, as originally issued, the proceeds were payable to Marion Goldsmith, her executors, administrators or assigns. The policy was changed by endorsements dated September 12, 1932, identical in purport with those incorporated in policy No. 616,801, with the exceptions that the decedent's son John J. Goldsmith was named the contingent beneficiary instead of Berthold Goldsmith, Jr. and that the phrase "but after the death of said one of the beneficiaries the Insured alone shall have such rights" was added to the third paragraph of the second endorsement headed "ALL RIGHTS RESERVED TO THE BENEFICIARY." The company issued policy No. 305,776 on August 9, 1887. By the terms of this policy, as *237 originally issued, the proceeds were payable to Judith Goldsmith, mother of the decedent, "if living, and if not living, then to his executors, administrators or assigns." By endorsements dated August 23, 1932, made on the policy it was changed as follows: "By mutual consent and upon request this policy No. 305776 is made to read and shall be payable to the Insured's wife, Marion Goldsmith the beneficiary. All rights reserved to the beneficiary. "THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK "New York, N. Y. August 23, 1932 William L. Simrell Secretary (Signed)" "ALL RIGHTS RESERVED TO THE BENEFICIARY. - Marion Goldsmith without the consent, and to the exclusion, of the Insured, or any other beneficiary, or any other person, shall have the right, during his lifetime to exercise every option, enjoy every privilege, and receive every benefit conferred by this policy, or allowed by the Company, including the right to change the beneficiary. "Change of Beneficiary. - Unless there be an existing assignment of this policy other than to the Company, the right to change the beneficiary may be exercised from time to time, while the policy is in force, by filing written notice, at *238 the Home Office of this Company, accompanied by the policy for endorsement. Such change shall take effect upon endorsement of the policy by the Company. "The interest of any beneficiary who dies before the Insured (the person upon whose life this policy is issued) shall vest in the Insured unless otherwise provided in this policy. "THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK. "New York, N. Y., August 23, 1932 "31-519 ARABC to B. Life Prior 1907 William L. Simrell Secretary (Signed)" None of the endorsements on policies 616,801, 799,126 and 305,776 made on August 23, 1932, September 12, 1932 and August 23, 1932, respectively, was made in contemplation of death. At the date of the decedent's death the policies of insurance Nos. 616,801, 799,126 and 305,776 were in a safe deposit box held in his name and he alone had access to that box. After the endorsements of the policies Nos. 616,801, 799,126 and 305,776, made on August 23, 1932, September 12, 1932 and August 23, 1932, respectively, no action with respect to these policies was taken by the decedent, his wife or his sons prior to his death other than the payment by his wife of the premiums due thereon. Opinion VAN FOSSAN, *239 Judge: The issue involves the construction and evaluation of the interest, if any, which the decedent possessed at the time of his death in three insurance policies with the Mutual Life Insurance Company of New York. By the endorsements on all policies, the decedent's wife, Marion Goldsmith, acquired the sole and exclusive right to use and enjoy all the privileges and benefits thereof. The decedent retained no interest whatever in the policies, and therefore at his death nothing passed to his estate. The third of the endorsements of August 23 and September 12, 1932, provides that if the insured should survive the beneficiary he would regain the interest which said beneficiary had possessed. See . The decedent's wife and two sons survived him. At his death he possessed no possibility of a reverter, and therefore the numerous cases which discuss that principle are not in point. In , affirmed , we discussed similar. facts and held there that the trustor possessed no possibility of a reverter at his *240 death. See ; ; . Respondent concedes that if our memorandum opinion in Estate of James W. Henry, deceased, Docket No. 109513, decided January 16, 1943, is indistinguishable on the facts, petitioner should prevail. Respondent originally appealed the Henry case but later consented to a dismissal and subsequently acquiesced in our decision. In our decision in the Henry case we followed the Ballard case and applied it to facts essentially like those in the case at bar. In the Ballard case we said: * * * The transfer to them was in effect made contingently upon her death, not his. By the grantor's death the children received no "valuable assurance" resulting from a termination of control exercisable by the grantor. See . It is true that if the wife had predeceased the grantor his death would then have assumed controlling significance. That contingency, however, never occurred. Up *241 until the time he died, as the facts demonstrated, the transfer was complete and irrevocable in so far as decedent was concerned. His death did not terminate any control by him and consequently did not vest control in anyone else. That language has peculiar applicability to the situation here. We see no real difference between the cited cases and the case at bar. The respondent points out only that at the time of the decedent's death the policies were held in the safe deposit box, to which he alone had access, and that the proof fails to show delivery of the policies to his wife or her knowledge of the several endorsements thereon. Insurance policies are not in the category of cash or negotiable securities. They are contracts intended to confer special benefits upon the beneficiaries, with intermediate rights usually reserved to the insured. The natural and normal procedure of the decedent was to place such instruments in his safe deposit box. We deem it wholly unnecessary that he deliver the documents to the beneficiaries, (in fact, in some cases that would be impossible, in view of the many primary, secondary and contingent beneficiaries), or that he acquaint them with the contents *242 thereof. Moreover, it is inferable that the decedent's wife already had full knowledge of the policies because the fact is stipulated that, after the endorsements were made, she paid the premiums due on the policies. We have examined the recent case of , and find that case not to be contrary authority. The court distinguished the facts in the Stinson estate case from those in , stating: * * * The case at bar is distinguishable from the Kellogg case on which the appellant strongly relies for in that case, as we have stated, . "* * * the fact of importance * * * is that the grantor during his lifetime disposed of his interests in the corpus of the trust as well as any man could." Kellogg retained nothing. He had merely a possibility of reverter. * * *. So here the decedent had not even a possibility of reverter. There was only the remote possibility of regaining *243 a right which he had finally relinquished many years before. See . No part of the proceeds of the three insurance policies is includible in the decedent's estate. Decision will be entered under Rule 50.